UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Cecilia M. Thompson | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 16 CV 50358<br>) Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill, Acting<br>Commissioner of Social Security,[1] | )<br>)<br>) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

This is a Social Security disability appeal. Plaintiff Cecilia Thompson is a married 50-year-old mother of three grown children, who has a limited work history outside the home. She claims that she is disabled primarily because of panic attacks that make it difficult for her to go out in public without her husband or even to be alone in her house. Although she alleges that she suffered from anxiety since she was a teenager, she did not seek treatment for panic attacks until after she filed her disability application. The administrative law judge ("ALJ") concluded that plaintiff was not disabled, in part because she found this lack of treatment, as well as plaintiff's lack of visits to the emergency room, to be suspicious. The ALJ also discredited the opinions of two treating medical providers on similar grounds. Plaintiff's primary argument in this appeal is that the ALJ provided only "minimal reasoning" for why she rejected these opinions. The Court agrees that a remand is warranted based on this argument.

To recap the relevant facts, plaintiff filed her application in May 2013. In August, she was evaluated by a consulting psychologist, Kirk Witherspoon, who observed that plaintiff was

---

[1] Nancy A. Berryhill has been substituted for Carolyn W. Colvin. Fed. R. Civ. P. 25(d).

"mildly anxious" and diagnosed her with "Adjustment Disorder with mixed anxiety and depressed mood." R. 349.

A few months later, in October 2013, plaintiff began therapy with, Christina Lutz-Haan, a counselor, who plaintiff would continue to see over the next year. In April 2014, plaintiff began treatment with Dr. Thomas Dennison, a psychiatrist, who worked with Ms. Lutz-Haan. He prescribed medication for plaintiff's panic attacks. Later in 2014, Dr. Dennison and Ms. Lutz-Haan jointly completed two evaluation forms that are the backbone of plaintiff's case. The first was a one-page, checkbox-style form entitled Mental Capacities Evaluation, dated August 27, 2014. On this form, they checked the boxes indicating that plaintiff had extreme limitations in activities of daily living, marked restrictions in social functioning, and marked restricted restrictions in concentration, persistence, or pace, and also that she would miss four or days a month because of her panic attacks and anxiety. R. 420. The second was a seven-page Mental Impairment Questionnaire, dated October 8, 2014. On this form, they opined (among other things) that plaintiff had extreme limitations in the three categories referred to above, and they also checked the box indicating that plaintiff had four or more episodes of decompensation. R. 435. In short, if credited, these evaluations would establish that plaintiff could not work full-time.

Earlier, in the fall of 2013 and in January 2014, three state agency physicians also completed written evaluations. Exs. 2A, 3A, 4A. They found that plaintiff had no limitations in activities in daily living, mild limitations in social functioning,[2] no limitations in concentration,

---

[2] One doctor found no limitations in this category. R. 72.

persistence or pace, and no episodes of decompensation.[3] R. 72, 82, 93-94. At the administrative hearing in May 2015, the ALJ did not call an impartial medical expert.

In sum, the medical opinions fall into a Goldilocks-and-the-Three-Bears framework, with the State agency doctors finding basically no problems, with Dr. Witherspoon in the middle offering a lukewarm assessment, and with Dr. Dennison and Ms. Lutz-Haan opining that plaintiff's problems were severe. In her decision, the ALJ only briefly referred to Dr. Witherspoon's opinion, offering no substantive analysis. As for the State agency physicians, the ALJ rejected them with the terse explanation that they were rendered without having seen plaintiff's later mental health records. R. 26.As for Dr. Dennison and Ms. Lutz-Haan, the ALJ gave two reasons (discussed below) for giving their opinions only little weight. In sum, the ALJ rejected all the medical opinions.

The Court agrees with plaintiff that the ALJ's analysis of the medical opinions was insufficient. As a matter of procedure, the ALJ did not follow the treating physician rule and, in particular, did not explicitly apply the six checklist factors. As explained in earlier opinions, this Court takes the view that an explicit analysis is required. *See Duran v. Colvin*, 2015 U.S. Dist. LEXIS 101352, *8-9 (N.D. Ill. Aug. 4, 2015). The Government does not dispute this conclusion but instead attempts to cull together an implicit analysis. For example, the Government argues that Dr. Dennison only saw plaintiff once before he rendered the August 2014 evaluation and suggests that he thus did not have a "unique perspective" into plaintiff's condition, which is an argument implicating the first two checklist factors. But the problem with this argument is that it is an after-the-fact explanation and not one offered by the ALJ who did not discuss the length of treatment issue. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("the *Chenery* doctrine

---

[3] The agency physicians found that plaintiff, who is obese, could frequently climb ladders, ropes, ramps, and scaffolds. R. 74.

[] forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced").

Even putting aside the failure to apply the checklist, the ALJ's explanation is insufficient. As noted above, the ALJ offered two reasons for rejecting the evaluations from Dr. Dennison and Ms. Lutz-Haan. The first reason was that the evaluations were "inconsistent with mental status examinations, which revealed intact memory, appropriate affect, average intellect, cooperative attitude, and unremarkable thought content." R. 26. But it is not clear why these findings were inconsistent with recurring panic attacks. For example, the Court is not aware of any connection between having an "average intellect" and panic attacks, and no medical expert in this case has suggested that this is a discrepancy. The same question applies to having a "cooperative attitude" and an "intact memory." The ALJ only cited to one piece of evidence to support this line of argument, which was the notes from plaintiff's February 6, 2014 visit with Ms. Lutz-Haan. R. 481-82. Although Ms. Lutz-Haan did state in these notes that plaintiff had the normal mental status findings noted above, Ms. Lutz-Haan still diagnosed plaintiff with panic disorder and recommended that she continue taking her medications. In short, Ms. Lutz-Haan did not view the normal mental status findings to be a reason for doubting plaintiff.

The ALJ's second reason was that Dr. Dennison and Ms. Lutz-Haan indicated that plaintiff had four or more episodes of decompensation. The ALJ believed this conclusion was unsupported because plaintiff had never been hospitalized for panic disorder or showed "any worsening of mental health symptoms whatsoever." R. 26. However, the problem with this argument, especially given that it was one of only two reasons given for disregarding these two evaluations, is that the phrase "episodes of decompensation" is vague and not always consistently interpreted. *See Larson v. Astrue*, 615 F.3d 744, 747, 750 (7th Cir. 2010) ("Although

4

everyone seemed to think that he or she knew what is meant by 'episodes of decompensation,' this is not a self-defining phrase."). The ALJ's reference to "no hospitalizations" (an issue discussed further below) raises a concern that the ALJ may have taken a "too narrow" interpretation, and may not have considered that an episode of decompensation may also be inferred from, among other things, "a significant alteration in medication." *Id.* It is true that Dr. Dennison and Ms. Lutz-Haan likewise did not explain their reasoning nor specifically identify the alleged episodes. On remand, this issue should be explored further and, if appropriate, the ALJ should seek clarification from Dr. Dennison and Ms. Lutz-Haan. In sum, neither of the ALJ's two reasons, as currently articulated, provide a basis for rejecting *in toto* the evaluations from two treating providers. Given the lack of any supporting medical opinion, the ALJ was thus forced to "play doctor" by analyzing the medical evidence on her own. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Having found that a remand is appropriate based on the above argument, the Court will briefly address two additional arguments. Plaintiff argues that two of the ALJ's three reasons for finding plaintiff not credible were erroneous. Plaintiff objects to the following: "While the claimant testified that she goes out only with her husband and will still experience panic attacks twice a day, she has not been hospitalized as a result of such allegedly severe and persistent symptomatology." R. 25. The ALJ's no-hospitalizations argument was made several times in the decision, but the ALJ never offered any medical or legal authority to substantiate the underlying premise, which is that a person experiencing severe panic attacks necessarily would go to the emergency room or would be hospitalized as part of a treatment plan. Other courts in this Circuit have questioned this premise. *See, e.g.*, *Mattson v. Berryhill*, 2017 WL 5011890, *5 (N.D. Ill.

5

Nov. 2, 2017) ("It is plausible that one may be unable to work but not need psychiatric hospitalization, and someone may experience panic attacks without having objective evidence of them."); *Adams v. Berryhill*, 2017 WL 4349718, *12 (N.D. Ind. Oct. 2, 2017) ("While inpatient hospitalization can be indicative of serious mental health symptoms, a lack of hospitalization does not necessarily mean that the individual's symptoms are not disabling."). In *Quinones v. Colvin*, 2017 WL 337993 (N.D. Ill. Jan. 23, 2017), the Court stated as follows:

> the ALJ appeared to have decided that Claimant was not credible because "[i]n spite of allegations of severe panic attacks, she had never been hospitalized." (R. 16.) This reasoning, however, has been rejected by the Seventh Circuit, which has noted that "[t]he institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves." *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015). Nothing in the SSRs or regulations requires a claimant to be hospitalized to demonstrate a severe mental impairment. *Worzalla v. Barnhart*, 311 F.Supp.2d 782, 796 (E.D. Wis. 2004). The ALJ offers no support for his apparent assumption that Claimant had to be hospitalized before her testimony would be deemed credible.

*Id.* at *4. On remand, the ALJ should provide a more detailed explanation, supported by an expert opinion, before relying on this argument to find plaintiff not credible.

Another credibility rationale criticized by plaintiff is the following sentence: "The claimant has admitted that she enjoys spending time with her grandchildren, and her cousins visit to play cards." R. 25. Elsewhere in the decision, the ALJ periodically referred to plaintiff's other activities such as the fact that she "goes grocery shopping once a week" and "can do dishes, laundry, and cook" on her "good days." R. 23. Plaintiff argues that the ALJ erred by misunderstanding the difference between doing flexible and sporadic chores in the home versus working full-time work and by overlooking qualifying details about the frequency and nature of these activities. The Government argues in response that the ALJ's reliance on these activities was "not dispositive," but was only one part of a larger credibility analysis. Assessing these

competing arguments, which are similar to those made in many disability cases, inevitably requires some degree of line-drawing, but in this case, the Court finds that plaintiff has the better argument. For one thing, as noted above, the ALJ's other credibility arguments are not especially strong. For another thing, the Court agrees with plaintiff that the ALJ failed to give serious consideration to the various qualifications such as the fact that plaintiff did the grocery shopping with her husband and that they often did it at 2 am to avoid being around people. R. 55. Moreover, as for seeing her grandchildren and playing cards with her cousins, these activities were typically done in plaintiff's home where she was less prone to experience panic attacks as a long as her husband was there. For all these reasons, the Court finds that the ALJ's reliance on plaintiff's daily activities, at least as currently articulated, is not a valid basis for finding her not credible. *See Cullinan v. Berryhill*, 878 F.3d 598 (7th Cir. 2017) (remanding because "the ALJ did not explain why" chores such as making beds, doing laundry, and making coffee were "inconsistent with Cullinan's description of her pain and limited mobility").

On remand, the ALJ should explore these issues in greater detail and should call an impartial medical expert to help address these questions. *See* HALLEX I-2-5-34A.1. In remanding this case, the Court is not indicating that the ALJ should reach any particular result on remand.

For the foregoing reasons, plaintiff's motion for summary judgment is granted, the government's motion is denied, and this case is remanded for further consideration.

Date: November 16, 2018   By: _____
                              Iain D. Johnston
                              United States Magistrate Judge